UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff | )<br>)<br>) |
| v. | )    Docket No. 2:18-CR-12 |
| RANDY SHELTRA,<br>    Defendant. | )<br>)<br>) |

## GOVERNMENT'S OPPOSITION TO EMERGENCY MOTION FOR RELEASE

The United States of America, by and through its attorney, Christina E. Nolan, United States Attorney for the District of Vermont, hereby files its Opposition to defendant Randy Sheltra's Emergency Motion for Release Pending Trial due to Public Health and Safety Threat Posed by COVID-19 (the Motion). (Doc. 123). For the reasons set forth below and on the record before the Court, the Court should deny the Motion.

### I.    PROCEDURAL BACKGROUND

On February 1, 2018, the grand jury returned a single-count indictment against Sheltra that charged him with enticement of a minor, a violation of 18 U.S.C. § 2422(b). Sheltra was arrested the following day and the government moved for his detention, alleging that Sheltra posed a danger to the community and a risk of flight. (Doc. 8). On February 8, 2018, after a hearing, the Court ordered Sheltra detained based on its finding that he presents a danger to the community. (Doc. 16).

The grand jury returned a superseding indictment twice, on October 4, 2018 and on October 25, 2018, to add a second enticement count and an attempted receipt of child pornography count, in violation of 18 U.S.C. § 2252(a)(2). (Doc. 34 and 43).

1

After a lengthy delay to assess Sheltras competence, the matter is presently set for jury trial on August 11, 2020. (Doc. 117).

**II.    SHELTRA'S CURRENT HOUSING SITUATION**

The following information was provided to government counsel by Jon Sylvia, living unit supervisor at the Vermont Northeast Correctional Complex in St. Johnsbury, Vermont (Northeast):

- On or about Friday, April 10, 2020, after Sheltra tested positive for the coronavirus, he was moved from the Northwest State Correctional Facility in Swanton, Vermont, to Northeast, a medium security facility.

- Sheltra and all other inmates who tested positive for the virus were moved to Northeast to segregate them from the rest of the inmate population. There are other inmates still at Northeast, but those inmates are housed away from the COVID-19 inmates.

- The COVID-19 inmates are housed in either single or double cells. Each cell has its own toilet and sink. The inmates are allowed to shower, have access to the attorney phones, and have access to tablets to communicate with family.

- Medical professionals are at Northeast at all times and are actively monitoring the health of the inmates.

The following information was provided to government counsel by Deputy U.S. Marshal Carl Staley:

- All federal inmates who have tested positive for the virus are either asymptomatic or experiencing mild symptoms.

- There are medical providers at the facility who actively monitor the inmates' health. Those providers are in daily communication with a nearby hospital (Northeast Regional Hospital) regarding the inmates' health.

- If an inmate needs advanced medical care, he would be stabilized at the regional hospital and, if necessary, transported to the University of Vermont Medical Center.

- The highest levels of Vermont state government are involved in monitoring the inmates' conditions.

## III. ARGUMENT

Upon motion of the United States in an eligible case, a defendant must be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is thus appropriate in cases where a defendant presents either a danger to the community or a risk of flight. In reaching those conclusions, the Court must consider:

> (1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g). Accordingly, categorical decisions about detention or release based on extraneous factors, rather than individualized determinations as to each defendant, are inappropriate and are foreclosed under the statutory structure. Finally, in light of the pending charges for an offense that involved a minor victim, the Bail Reform Act mandates a rebuttable presumption in favor of detention. *Id*. at § 3142(e)(3)(E).

Pursuant to 18 U.S.C. § 3142(f), a detention proceeding may be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

In his Motion, Sheltra seeks his release exclusively on the COVID-19 pandemic. This is a circumstance not unique to Sheltra. As such, the detention order should not be disturbed on this basis.

Sheltra further expresses concern over his care while in prison in light of his positive diagnosis. He posits that he would do better self-isolating by himself at his home. The government strongly disagrees. First, Sheltra's positive diagnosis requires that he stay quarantined to protect others from him. While at Northeast, he is able to do just that as he only interacts with others who have tested positive, or facility employees. There is thus minimal risk that he will inadvertently infect someone. Second, Sheltra has access to medical professionals at all times while at Northeast. If he needs additional medical care, that need will be promptly identified and addressed. Accordingly, Sheltra appears to have greater access to health care resources while at Northeast than he would if he were at home.

Significantly, the facts that justified the original order of detention have not changed, and Sheltra does not argue that they have. Indeed, with each superseding indictment, the danger to the community posed by Sheltra became more obvious. To begin, the original indictment charged Sheltra with attempted enticement in connection with his efforts to convince a person whom he thought was the mother of a 10-year old (in reality, the person was an undercover law enforcement officer) to have the mother and the child engage in sexual activity with him. The First Superseding Indictment added an enticement count and related to his attempt to entice a real 15-year old child to have sex with him. Sheltra also traveled to meet this minor, and engaged in sexual contact with her. Count Three, added by the Second Superseding Indictment, charges Sheltra with attempted receipt of child pornography because he asked the 15-year old whom he met to send him sexually explicit photos of herself. The evidence to support these charges, most of which was found on his phone, is quite compelling and reveals Sheltra to be a significant danger to the community, just as the magistrate judge determined at the original hearing.

The risk Sheltra poses to the community is also seen in, among other things, the unsolicited disclosure by L.S., Sheltra's family member, after his arrest that Sheltra sexually assaulted her when she was a child. (*See* summary of L.S.'s allegations in Government's Motion *in limine* #2 (Doc. 72)). While Sheltra denies this conduct, L.S.'s disclosure is consistent with the charged conduct and confirms Sheltra's sexual interest in children and his willingness to act on that interest.

The relief requested by Sheltra in his Motion — immediate release from custody pending trial to self-quarantine at his home — is not supported by the applicable legal standards and is not justified by any of his arguments. Further, Sheltra has not challenged any of the pertinent

factual findings made by the Court that supported an order of detention. Nothing before the Court suggests that any information as to those factors has changed since the Court's determination regarding detention. As such, the Motion should be denied.

IV. **CONCLUSION**

For all of the foregoing reasons, the Court should deny Sheltra's Motion and leave the detention order in place.

Dated at South Burlington, in the District of Vermont, April 15, 2020.

                                            UNITED STATES OF AMERICA

                                            CHRISTINA E. NOLAN
                                            United States Attorney

                                            */s/ Barbara A. Masterson*
                                            BARBARA A. MASTERSON
                                            ANDREW C. GILMAN
                                            Assistant U.S. Attorneys
                                            P.O. Box 570
                                            Burlington, VT  05402-0570
                                            (802) 951-6725