UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA )
               Plaintiff, )
               )
      v. )
               )      Case No.  2:18-cr-12
RANDY SHELTRA )
            Defendant. )

## DEFENDANT'S POST-TRIAL MOTION
## FOR A JUDGMENT OF ACQUITTAL AND/OR FOR A NEW TRIAL

Defendant, Randy Sheltra, moves for a judgment of acquittal after a jury verdict under Federal Rule of Criminal Procedure 29(c) ("Rule 29"), and for a new trial under Federal Rule of Criminal Procedure 33(a) ("Rule 33").

### I.      PROCEDURAL BACKGROUND

The Government charged Defendant Randy Sheltra in the Second Superseding Indictment as follows: *See* Second Superseding Indictment (Doc. 43).

<u>Count One:</u>    From on or about September 7, 2017, through on or about September 10, 2017, in the District of Vermont, the defendant, RANDY SHELTRA, using any facility and means of interstate and foreign commerce, did knowingly attempt to persuade, induce, entice, and coerce and individual who had not attained the age of 18 years to engage in sexual activity for which any person can be charged with a criminal offense.

      (18 U.S.C. §2422(b))

<u>Count Two:</u>    From on or about August 20, 2017, through on or about August 31, 2017, in the District of Vermont, the defendant, RANDY SHELTRA, using any facility and means of interstate and foreign commerce, did knowingly attempt to persuade, induce, entice, and coerce an individual, E.R., who has not attained the age of 18 years to engage in sexual activity for which any person can be charged with a criminal offense.



Park Plaza · Suite 405
95 St. Paul Street
Burlington, VT 05402
(802) 651-0013

(18 U.S.C. §2422(b))

<u>Count Three:</u>  On or about August 25, 2017, in the District of Vermont, the defendant, RANDY SHELTRA, knowingly attempted to receive any visual depiction using a means and facility of interstate and foreign commerce that has been shipped or transported in or affecting interstate or foreign commerce, by any means including by computer, where the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and the visual depiction is of such conduct.

The case went to trial before a jury on November 9, 2020.  At the close of the Government's evidence, Mr. Sheltra moved under Rule 29 for a judgment of acquittal on all counts. *See* Tr., Trial Day 2 at P. 381 (Doc. 201).  The Court denied the motion.  At the close of the defense case, Mr. Sheltra renewed his motion for judgment of acquittal, and, after considering the parties' arguments, the Court again denied Mr. Sheltra's motion and allowed these charges to be considered by the jury.  *See* Tr., Trial Day 3 at P. 553 (Doc. 202)

After a four-day trial, on December 11, 2020, the jury returned guilty verdicts on all counts in the Second Superseding Indictment.  *See* Special Verdict Form (Doc. 198).

## II.    THE EVIDENCE AT TRIAL

### A.  <u>Count One – Enticing Maddie, a Minor, to Engage in Sexual Activity</u>

The government's primary witness, with respect to Count One, was the undercover agent, Morgan Lawton (hereafter "Ms. Lawton).  Ms. Lawton testified as to her background and experience, how she became involved in this matter and through her, the government introduced the emails and text messages between Ms. Lawton and Mr. Sheltra as Government's Exhibit 2.

Ms. Lawton testified that she currently works for the State of Vermont Department of Children and Families – Family Services Division. *See* Tr., Trial Day 3 at P. 24 (Doc. 202). Before that, she worked for the Essex Police Department and in 2012, was assigned to the Chittenden Unit for Special Investigations frequently referred to as CUSI. *See* Tr., Trial Day 3 at P. 26 (Doc. 202). Ms. Lawton explained that CUSI was a unit that investigates crimes against

KAPLAN AND KAPLAN
ATTORNEYS AT LAW

PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

children as well as sexual crimes against adults throughout Chittenden County and that she has received training to become an undercover agent in investigating these cases. Ms. Lawton further testified that the training she received, in order to conduct undercover operations for child exploitation, involved using either chat applications, social media websites, and other websites where individuals who are interested in this subject matter would post messages. An example, according to Ms. Lawton, was Craigslist. *See* Tr., Trial Day 3 at P. 27 (Doc. 202).

Ms. Lawton further testified that she was working September 7, 2017 and noticed an ad on Craigslist that caught her attention. *See* Tr., Trial Day 3 at P. 28 (Doc. 202). The ad was introduced into evidence as Government's Exhibit 1. The title of the ad was "Looking for Alisha". Ms. Lawton then read the ad and explained in detail what her interpretation of the ad was. *See* Tr., Trial Day 3 at P. 32-33 (Doc. 202). Specifically, Ms. Lawton said that one of the things that caught her attention in the ad was the use of the term "taboo", which she indicated was a word frequently used by individuals who are interested in children as well as the reference in the ad to a nine- or ten-year-old daughter of Alisha. In addition, Ms. Lawton considered it suspicious when the ad indicated "we can all finally get together, make it all happen". Finally, there was the word "kink" in the ad which, again, raised Ms. Lawton's suspicions.

Ms. Lawton then testified that she responded to the Craigslist ad using an undercover persona. The undercover persona was a mother named Megan and she indicated that she had a ten-year-old daughter named Maddie. *See* Tr., Trial Day 3 at P. 36 (Doc. 202). At this point, the emails between Mr. Sheltra and Ms. Lawton were introduced into evidence by the government as Government's Exhibit 2 and read to the jury. During the reading of the emails, Ms. Lawton was asked to give an explanation as to her understanding of certain emails.

**B. Count Two – To Persuade E.R., a Minor, to Engage in Sexual Activity**

The government, in presenting evidence with respect to Count Two, did not call E.R. as a witness. Rather, the government introduced the email and text messages between Mr. Sheltra and


KAPLAN AND KAPLAN
ATTORNEYS AT LAW

PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

3

E.R. as Government's Exhibits 26 and 27, respectively. Subsequently, the government, in its closing, gave its interpretation of the correspondence between Mr. Sheltra and E.R.

### C. Count Three – Attempting to Receive Child Pornography

The issue in Count Three is whether or not Mr. Sheltra attempted to receive child pornography from E.R. The government sought to prove this issue by introducing the text messages between Mr. Sheltra and E.R. as Government's Exhibit 27. E.R. did not testify.

In presenting the text messages, the government relied specifically on two text messages sent by Mr. Sheltra to E.R. The first one said, "Can I see a pic of your labia hun? I want to feel it engulf me mmmm" and the second text message said, "I'd like to see those pussy lips hun. I hope you will send me a pic of them at some point".

## III.   THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE JURY'S VERDICT

The evidence is insufficient to sustain Mr. Sheltra's convictions on Counts One, Two, and Three.

"If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2).  A judgment of acquittal will be entered where "'the evidence is insufficient to sustain a conviction.'" *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011) (quoting Fed. R. Crim. P. 29(a)).  "The test for sufficiency is whether, as to a given count, a 'rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *Id.* (quoting *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003)).

> The court must make that determination with the evidence against a particular defendant viewed in a light that is most favorable to the government, and with all reasonable inferences resolved in favor of the government.  The jury may reach its verdict based upon inferences drawn from circumstantial evidence, and the evidence must be viewed in conjunction, not in isolation.

*United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008) (internal citations, quotation marks, brackets and ellipses omitted).

Kaplan and Kaplan
ATTORNEYS AT LAW

Park Plaza · Suite 405
95 St. Paul Street
Burlington, Vt 05402
(802) 651-0013

"'An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist.'" *United States v. Pauling*, 924 F.3d 649, 656 (2d Cir. 2019) (quoting *Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007)). "Impermissible speculation, on the other hand, is 'a complete absence of probative facts to support the conclusion reached.'" *Pauling*, 924 F.3d at 656 (quoting *Lavender v. Kurn*, 327 U.S. 645, 653 (1946)). "While we must defer to a jury's reasonable inferences, we give no deference to impermissible speculation." *Pauling*, 924 F.3d at 656 (citing *United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. 1994)).

Permissible inferences are differentiated from impermissible speculation by "the laws of logic and not judicial idiosyncrasies." *Pauling*, 924 F.3d at 656 (quotation omitted). "'[M]ere speculation [should] not be allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.'" *Pauling*, 924 F.3d at 656 (quoting *Galloway v. United States*, 319 U.S. 372, 395 (1943)). "'[T]he government must do more than introduce evidence at least as consistent with innocence as with guilt.'" *Pauling*, 924 F.3d at 656 (quoting *D'Amato*, 39 F.3d at 1256) (further quotation omitted). The court "'may not credit inferences within the realm of possibility when those inferences are unreasonable.'" *Pauling*, 924 F.3d at 657 (quoting *United States v. Quattrone*, 441 F.3d 153, 169 (2d Cir. 2006)).

While a defendant bears a heavy burden on a motion for judgment of acquittal, it is "not an impossible one." *United States v. Jones*, 393 F.3d 107, 111 (2d Cir. 2004) (citations omitted). "[I]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Hassan*, 578 F.3d 108, 122 (2d Cir. 2008) (quotation omitted). "After all, it would not satisfy the Constitution to have a jury determine that the defendant is *probably* guilty." *Id.* at 123 (quotations omitted).

KAPLAN and KAPLAN
ATTORNEYS AT LAW

Park Plaza · Suite 405
95 St. Paul Street
Burlington, VT 05402
(802) 651-0013

A court also may "grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Trial courts have "'broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice.'" *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992)). The test is "whether letting a guilty verdict stand would be a manifest injustice." *Ferguson*, 246 F.3d at 134 (citing *Sanchez*, 969 F.2d at 1414). The court must defer to the jury's assessment of the evidence, but in exceptional circumstances "'the trial judge may intrude upon the jury function of credibility assessment.'" *Ferguson*, 246 F.3d at 133-34 (quoting *Sanchez*, 969 F.2d at 1414).

> The trial court must be satisfied that "competent, satisfactory and sufficient evidence" in the record supports the jury verdict. [] The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. [] "There must be a real concern that an innocent person may have been convicted."

*Ferguson*, 246 F.3d at 134 (quoting and citing *Sanchez*, 969 F.2d at 1414). "Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" *Ferguson*, 246 F.3d at 134 (quoting *Sanchez*, 969 F.2d at 1414).

## A. Count One

The jury found Mr. Sheltra guilty of Count One. *See* Special Verdict Form at P. 1 (Doc. 198). Mr. Sheltra contends that the evidence was insufficient to support a jury verdict of guilty on this Count.

In order to convict the defendant of Count One, the charge of using a facility of interstate commerce to knowingly attempt to persuade, induce, entice, or coerce a minor to engage in unlawful sexual activity, in violation of § 2422(b), as charged in Count One of the indictment, the government is required to prove beyond a reasonable doubt the following elements:

1. That on or about the dates charged, the defendant knowingly attempted to persuade, induce, entice, or coerce a person to engage in a sexual activity;



Park Plaza · Suite 405
95 St. Paul Street
Burlington, VT 05402
(802) 651-0013

2.  That he did so by using a facility or means of interstate commerce;

3.  That he believed that the person was less than eighteen years old; and

4.  That the sexual activity was or would have been a criminal offense.

Mr. Sheltra took the stand and testified on his own behalf. According to his testimony, he never had any intention of inducing, enticing, or coercing the minor referred to as Maddie in Count One. Rather, Mr. Sheltra testified that he was only interested in having a sexual relationship with Ms. Lawton and not her child. Also, Mr. Sheltra testified that he was also interested in engaging in fantasy when he was emailing with Ms. Lawton. Mr. Sheltra, in support of his position, made an analogy to a relationship that he had previously developed with a person referred to as Alisha. It was Mr. Sheltra's testimony that in order to understand that he was only interested in Ms. Lawton and also simply engaging in fantasy when he was speaking with Ms. Lawton, it is necessary by comparison to understand his relationship with Alisha.

Specifically, Mr. Sheltra, testified that there were three significant aspects in his relationship with Alisha that would be helpful in understanding his intentions with Ms. Lawton.

First, Mr. Sheltra testified that the email correspondence he had with Alisha shows that he had no interest in having a sexual relationship with a minor. Secondly, the email correspondence with Alisha shows that he had an overriding interest in engaging in fantasy and thirdly, which is closely related to the fantasy issue, Mr. Sheltra testified that he thoroughly enjoyed engaging in sexual banter.

Mr. Sheltra testified that he first came into contact with Alisha in June 2016 when he responded to an ad that had been posted on Craigslist by Alisha. The ad indicated that Alisha was looking for someone to go on a date with. Mr. Sheltra responded by saying that he would be interested in doing so. Mr. Sheltra and Alisha quickly struck up a relationship though emails and, according to Mr. Sheltra's testimony, very soon began speaking about engaging in a sexual relationship. There are a number of statements made during the correspondence that shows that Mr. Sheltra was not interested in having a sexual relationship with a minor.



PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

For example, at some point, while the parties were talking about engaging in a sexual relationship, Alisha indicated that she had a young daughter, but that they could engage in a sexual relationship in the car with the daughter in the back seat. Immediately, according to the emails and his testimony, Mr. Sheltra rejected this idea and said that this was not something he was interested in doing. Mr. Sheltra testified, that he told Alisha he would be willing to rent a motel room and when her daughter had fallen asleep in one bed, they could have a sexual relationship in the other. However, at some point during this discussion, Mr. Sheltra asked Alisha how old her daughter was. When Alisha said that her daughter was nine years old, Mr. Sheltra, again, rejected the idea of engaging in a sexual relationship in the same room that her daughter was in and indicated that he would be willing to pay for a babysitter.

The above discussion clearly shows that Mr. Sheltra was not interested in a sexual relationship with a minor.

Mr. Sheltra further testified that when he realized he was going to have to be more accommodating to Alisha if he wanted to meet her, he did agree that the child could be in the same room with them. However, he said, "Alright, if you insist. But I want you to know that I am only going to be looking at you. I am not going to be looking at anyone else".

In addition, Mr. Sheltra testified that the kinds of sexual related discussions he had with Alisha clearly demonstrate that he was interested in engaging in sexual banter and/or fantasy rather than actually engaging in a sexual relationship with a minor. For example, Mr. Sheltra had a discussion with Alisha about having sex with a horse, about using a fire extinguisher and other implements during the course of sex. In addressing this issue in his testimony, Mr. Sheltra testified that he was not interested in doing anything with respect to a horse or a fire extinguisher or anything else of that nature. Rather, it was something that he enjoyed talking and fantasizing about.

Mr. Sheltra testified that he only began to express more interest in having the child involved in a relationship when he realized that would be the only way he would be able to meet


KAPLAN AND KAPLAN
ATTORNEYS AT LAW

PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

8

Alisha. Mr. Sheltra concluded by saying that if they did meet, he would not have done anything with the minor daughter.

Again, Mr. Sheltra testified that in order to determine his intent, one had to do more than just look at his words, but try to understand what he was really thinking. Mr. Sheltra testified that his behavior and relationship with Ms. Lawton is analogous to his relationship with Alisha and that his primary interest was having a relationship with Ms. Lawton and also engaging in sexual fantasy and not having a sexual relationship with a minor.

Mr. Sheltra testified how the emails that he forwarded to Ms. Lawton arose out of his interest in fantasy and not his interest in having a sexual relationship with a minor. For example, at one point, Mr. Sheltra had indicated to Ms. Lawton that, "[i]f there were no laws and no public judgment, what would be your wildest fantasy? …" According to Mr. Sheltra, he was attempting to have the undercover police officer, "share her fantasies with me". Mr. Sheltra explained that he was asking about Ms. Lawton's fantasies so he could fantasize about them at night. As Mr. Sheltra further testified, "that was what intrigued me". Also, Mr. Sheltra explained that when he engaged in emails with Ms. Lawton explaining how the relationship between her daughter and her would develop, he gave this lengthy explanation because, "it was feeding her what she was looking for".

The defense would argue that that testimony of Ms. Lawton on cross-examination supported Mr. Sheltra's testimony in two respects. First, Ms. Lawton testified that there are individuals who enjoy engaging in sexual banter and/or who are just only interested in fantasy and not interested in having a physical relationship with a minor child. According to Ms. Lawton's testimony, the determining factor is whether or not the individual makes an effort to meet with the minor child. See the following testimony of Ms. Lawton, on cross-examination.

Kaplan and Kaplan
ATTORNEYS AT LAW

Park Plaza · Suite 405
95 St. Paul Street
Burlington, VT 05402
(802) 651-0013

20 Q    So how do you actually know -- when all this is said and

21 done and you've heard all of the detailed explanations of what

22 you said and what his response is, how do you know he actually

23 intended to do something?

24 A    He said in the emails what he intended and then arranged

25 to meet and showed up at the meeting location.

Morgan J. Lawton - Cross                    102

1 Q    So is it your testimony that the fact that he arranged to

2 meet with you is fairly detailed?

3 A    Yes.

4 Q    And that's important because it shows his intent?

5 A    Yes.

6 Q    And it's important because if he didn't do that, just

7 looking at the emails themselves wouldn't be enough to show

8 that he intended to do anything?

9 A    Correct.

See Tr., Trial Day 1 at P. 101, L. 20-25 to P. 102, L. 1-9; Doc. 200.

And the following:

KAPLAN AND KAPLAN
ATTORNEYS AT LAW

PARK PLAZA - SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

14  Q    Okay.  And are you taught in your training and from your

15  experience that when you get involved in an area like this,

16  that there are people that just fantasize about what's going

17  on, enjoy that kind of sexual dialogue with others?

18  A    Yes.

19  Q    Okay.  So you're aware of that issue?

20  A    Yes.

21  Q    And when you look at the graphic descriptions that Mr.

22  Sheltra said about what could happen with you and with your

23  daughter, doesn't that strike you as being a little extreme?

24  A    What do you mean by "a little extreme"?

25  Q    Well, in terms of going into as much detail as he did,

Morgan J. Lawton - Cross                                    99

1  explaining how everything's supposed to be done step by step.

2  Doesn't that sound to you like someone that's more interested

3  in fantasizing about it and thinking about it than actually

4  doing it?

KAPLAN AND KAPLAN
ATTORNEYS AT LAW

PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

```
 5          MR. GILMAN:  Objection.  Calls for speculation.

 6          THE COURT:  I'll allow it.

 7  A    Not necessarily, no.

 8  Q    Okay.  So when you say "not necessarily," it's certainly a

 9  possibility?

10  A    Based on just the conversations alone, yes.  People who

11  are interested just in fantasy and in talking don't usually

12  suggest meeting or make arrangements to actually meet.
```

See Tr., Trial Day 1 at P. 98, L. 214-25 to P. 99, L. 1-12; Doc. 200.

The above testimony of Ms. Lawton is extremely important, given the fact that Ms. Lawton testified that she was an extremely experienced undercover police officer in this area, essentially, that she was an expert in this field. And so, as an expert, Ms. Lawton was testifying that there certainly are individuals who engage in sexual banter because they are interested in fantasy as opposed to being interested in engaging in criminal conduct.

Based on the above, the issue in this case as to whether or not Mr. Sheltra was actually interested in having a sexual relationship with a minor, hinges on why Mr. Sheltra was driving to South Burlington. Was it for the sole purpose of engaging in a sexual relationship with a minor child or was he only interested in engaging in a sexual relationship with Ms. Lawton? It would appear, based on the evidence, that there was not sufficient evidence to show that Mr. Sheltra's intention was to drive to South Burlington for the purpose of engaging in a sexual relationship with a minor child. The emails and text messages between the parties themselves support this position.

On September 10, 2017, as Mr. Sheltra was making arrangements to meet with the undercover police officer, he sent the following text:



KAPLAN AND KAPLAN
ATTORNEYS AT LAW

PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

> *Our meeting – Sunday, late afternoon/early evening should work for me. Would you like to get something to eat? We can meet wherever/wherever you would like/downtown is fine. I don't know your, or Maddie's eating habits... Please let me know what you think. I'm fine with anything from a slice or two of pizza/to a hamburger to Olive Garden, or basically anything. Maddie is absolutely welcome and wherever we decide to go is on me.*

The only reasonable interpretation of the above correspondence between Mr. Sheltra and Ms. Lawton is that Mr. Sheltra's primary interest was in meeting with her and not with her minor child. It could not be clearer when Mr. Sheltra says, "Maddie is absolutely welcome…" In other words, he was coming whether or not Maddie was present. The significance of this statement has a direct relationship to Ms. Lawton's testimony that the way one is able to ascertain an individual's true intent is by whether or not they make arrangements to meet with the minor child. In this case, it is clear that Mr. Sheltra's intention was to meet with the undercover police officer, whether or not Maddie was present.

Based on the above, the government failed to introduce sufficient evidence to support a conviction of guilty on Count One.

**B.  Count Two**

The jury found Mr. Sheltra guilty of Count Two. *See* Special Verdict Form at P. 1 (Doc. 198) Mr. Sheltra contends that the evidence was insufficient to support a jury verdict of guilty on this count.

In order to convict the defendant of Count Two, the charge of using a facility of interstate commerce to knowingly attempt to persuade, induce, entice, or coerce a minor to engage in unlawful sexual activity, in violation of § 2422(b), as charged in Count Two of the indictment, the government is required to prove beyond a reasonable doubt the following elements:

1.  That on or about the dates charged, the defendant knowingly attempted to persuade, induce, entice, or coerce a person to engage in a sexual activity;

2.  That he did so by using a facility or means of interstate commerce;

3.  That he believed that the person was less than eighteen years old; and


KAPLAN and KAPLAN
ATTORNEYS AT LAW

Park Plaza · Suite 405
95 St. Paul Street
Burlington, VT 05402
(802) 651-0013

13

4.   That the sexual activity was or would have been a criminal offense.

The government, as previously stated, did not call E.R. as a witness. Rather, the government introduced into evidence as Government's Exhibits 26 and 27 the emails and text messages between Mr. Sheltra and E.R. The government in introducing these documents and in its closing essentially argued that the jury should take Mr. Sheltra's statements at face value and, as a result, would have no choice but to convict Mr. Sheltra of Count Two.

Mr. Sheltra testified on his own behalf. Mr. Sheltra's position as expressed in his testimony was that it was not appropriate to take his correspondence at face value. Rather, it was imperative for the jury to ascertain his true motive. Again, Mr. Sheltra testified that his motive in his relationship with E.R. was based upon his interest in sexual banter and/or fantasizing about E.R. sexual activities.

Mr. Sheltra, in the course of his testimony, referenced several emails and text messages which he maintained showed that he was not interested in having a sexual relationship with E.R. Mr. Sheltra testified that his first contact with E.R. was when she responded to an ad Mr. Sheltra had posted on Craigslist. When Mr. Sheltra was asked on Direct Examination, "What was your reaction when you found out she was not of age?" Mr. Sheltra responded as follows:

> *My reaction was that I was not going to take any -- undertake any action with her sexually or otherwise because she was underage.*

In this respect, it is important to note that Mr. Sheltra made similar statements directly in his emails to E.R. on more than one occasion. For example, Mr. Sheltra testified that when he said to E.R. in the emails, "wait – you're not 16 yet?" he indicated that he made that statement because "I wanted to set the table and stage correctly that there was not going to be any sexual activity". Even when E.R. responded by saying that she would be 16 in two months and nine days, Mr. Sheltra again indicated that nothing sexual would take place while she was a minor.

In deciding whether or not Mr. Sheltra was only interested in sexual dialogue and/or fantasy with E.R. it is important to keep in mind that the statute does not criminalize merely



Park Plaza · Suite 405
95 St. Paul Street
Burlington, VT 05402
(802) 651-0013

speaking to a minor, asking about sex, or asking about an individual's interest in sex, which appears to be what Mr. Sheltra was doing in his correspondence, as opposed to actually having an interest in engaging in a sexual relationship with E.R.

Mr. Sheltra also testified about the meeting that took place between E.R. and himself. He testified, as the emails indicate, it was E.R. who requested the meeting. Mr. Sheltra's testimony was that during the time that they were together in his vehicle, nothing physical took place. Rather, E.R. and himself just engaged in conversation.

The government, in cross-examining Mr. Sheltra, introduced Government's Exhibit 24. This exhibit contained three emails that were sent by Mr. Sheltra to a person identified as "Person #1" in Plattsburgh, New York. The emails were somewhat contemporaneous with the timeframe in which Mr. Sheltra was either meeting with E.R. or had just left the meeting. These emails do contain references that Mr. Sheltra had engaged in a physical relationship with E.R. However, Mr. Sheltra denied that he had a physical relationship with E.R. Mr. Sheltra explained in his testimony that he sent these emails because Person #1 had expressed an interest in sexual relations with a minor. As a result, Mr. Sheltra's testimony was that he was just appealing to her interests to find out more about what she was thinking. There is some substantiation that Mr. Sheltra did not have a physical relationship with E.R. since there is no reference in the communications between Mr. Sheltra and E.R. that one took place. It is reasonable to conclude that if there had been physical contact between the two of them, at least one of them would have mentioned that in their communications, given the descriptive nature of their correspondence.

### C. Count Three

The Jury found Mr. Sheltra guilty of attempting to possess child pornography. *See* Special Verdict Form at P. 2 (Doc. 198) Mr. Sheltra contends that the evidence was insufficient to support a verdict of guilty on this count.

KAPLAN and KAPLAN
ATTORNEYS AT LAW

Park Plaza · Suite 405
95 St. Paul Street
Burlington, VT 05402
(802) 651-0013

In order to prove the defendant guilty of attempting to receive child pornography, the government must prove each of the following four elements beyond a reasonable doubt:

1. The defendant knowingly received or attempted to receive a visual depiction;

2. The visual depiction was transported in or affecting interstate commerce or was produced using materials that had been transported in and affecting interstate or foreign commerce;

3. The production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and portrayed that minor engage in that conduct; and

4. The defendant knew that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and portrayed a minor engaged in that conduct.

The issue in Count Three is whether or not Mr. Sheltra attempted to receive child pornography from E.R. The government presented evidence on this issue by introducing as Government's Exhibit 27 the text messages between Mr. Sheltra and E.R.

The government indicated that one of the text messages read, "Can I see a pic of your labia hun? I want to feel it engulf me mmmm" and a second text message in which Mr. Sheltra said, "I'd like to see those pussy lips hun. I hope you will send me a pic of them at some point". Mr. Sheltra, in his testimony, acknowledged that he had sent the two text messages in question, but testified that they were not intended for E.R. but rather for an individual named Treena that he was in a relationship with. Mr. Sheltra's testimony was that he inadvertently sent them to the wrong recipient. In support of this testimony, Mr. Sheltra introduced as Defendant's Exhibit C1 which indicated a number of text messages between Treena and himself, to show that he actually was in correspondence with her.

Based on the above, the government failed to introduce sufficient evidence to support a jury verdict of guilty on this count.



KAPLAN AND KAPLAN
ATTORNEYS AT LAW

Park Plaza · Suite 405
95 St. Paul Street
Burlington, Vt 05402
(802) 651-0013

16

## IV.    MR. SHELTRA SHOULD RECEIVE A NEW TRIAL

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Cr. P. 33(a).  In addition to the arguments regarding the sufficiency of the evidence outlined above, Mr. Sheltra moves for a new trial in the interest of justice on the following grounds.

First, Mr. Sheltra maintains that the Court erred in allowing the government to introduce the term "pedophile" over Mr. Sheltra's objection.

The government sought to introduce the term "pedophile" because it showed that Mr. Sheltra had knowledge of the illegality of his conduct, his awareness of E.R.'s age, and his intent. However, Mr. Sheltra maintains that this evidence is cumulative. Also, the evidence is clear that Mr. Sheltra was aware that the age of consent is 16, since Mr. Sheltra admitted this in his email correspondence with E.R. and that he understood that if he had a sexual relationship with a minor, he would be committing an illegal act. In addition, the email correspondence between Mr. Sheltra and E.R. clearly indicates Mr. Sheltra's awareness of E.R.'s age.

Additionally, Mr. Sheltra argues that this evidence is overly prejudicial and the value of the evidence being proffered is substantially outweighed by its potential prejudice. As a result, it seems obvious that as soon as a jury heard that Mr. Sheltra was searching the term "pedophile", the jury would most likely feel that he has committed the charged crime.

Also, Mr. Sheltra maintains, on a *pro se* basis, that he is entitled to a new trial since the Court erred in not allowing him to present at trial a defense by denying Defendant's *Pro Se* Motion to Settle and Close (Conversion to Express Trust) and also denying his *Pro Se* Motion to Dismiss for Outrageous Government Misconduct.

## V.    CONCLUSION

For all of the foregoing reasons, Mr. Sheltra respectfully requests that the Court grant his motion and enter judgments of acquittal based on the insufficiency of the evidence to sustain his convictions for Counts One, Two, and Three.



17

Mr.  Sheltra further requests that in the interests of justice, the Court, in the alternative, order a new trial on these counts.

DATED at Burlington, Vermont this 8 th day of March, 2021.

By:    /s/ Mark Kaplan
      Mark A. Kaplan, Esq.
      KAPLAN & KAPLAN
      95 St. Paul Street, Suite 405
      Burlington, Vermont 05402
      (802) 651-0013
      Counsel for Randy Sheltra

KAPLAN AND KAPLAN
ATTORNEYS AT LAW

Park Plaza · Suite 405
95 St. Paul Street
Burlington, Vt 05402
(802) 651-0013